Appeal number 19-2248 Attorney Santiago Rosa, please introduce yourself for the record and proceed with the argument. Yes, Rafael Santiago Rosa, Counsel for Appellant, Judge Howard, if possible I would like to reserve two minutes for rebuttal. Yes. Well, your honors, on or about the month of October 2018, my client filed the amended complaint which originated this appeal. That was a complaint that was filed in local court. It was essentially an impairment claim under the provisions of the Puerto Rico Dealers Act. As you know, Appellee removed that case to federal court and filed a motion to dismiss to compel arbitration. And the district court having found that an arbitration agreement exists, consequently dismissed my client's amended complaint. I have basically three comments to make today about the opinion on order supporting the district court's judgment, your honors. First, in its opinion on order, the district court makes a conclusion that the absence of a party's signature in a contract does not have the effect of invalidating the contract. And really, I am in full agreement with that statement. The problem is that the district court cited the cases of Figueroa versus Televisión Centro de Puerto Rico and the cases of TLT Construction Corporation versus RI, Inc., of this circuit. And in both instances, the statement is true, but a manifest acceptance of the contract is required as a condition for the contract to be deemed enforceable, for the unsigned contract to be deemed enforceable. My second comment would be that the district court in the footnote number three of the opinion on order made a determination of fact that both parties under the unsigned agreement operated pursuant to the terms and conditions of the written distribution agreement. And in that footnote, in order to make that inference, which by the way is an adverse inference to the plaintiff, the district court relies on the language of allegation number 12 of the complaint, which for its relevancy I would like to quote, and I quote, early in the year 2000, Aircon established a distribution relationship with what is now Daikin Applied for the exclusive sale and distribution of air conditioners and related equipment marketed under the Daikin brand for the territories of Puerto Rico and the Caribbean. And the gist of the argument of the district court is essentially that when it reads with what is now Daikin Applied, the district court made an adverse and erroneous inference that we were making reference to Daikin Industries, namely the party who never signed the distribution agreement. And you're going to say, well, why did your client sign the document? Well, my client signed it, sent it to Japan and never got a response from Japan. And if allowed to present evidence in a hearing, you will hear testimony not only from my clients, but also from ex-employees of Daikin in the United States with whom my client negotiated an Uber vote agreement. And that is in a sworn statement. But the issue here is that we were never allowed to present any evidence because the case got dismissed under the rule of the Federal Arbitration Act. And what is the problem? I'm sorry, I just don't understand what you're saying. Are you saying that you are conceding that you have a contract with Daikin Industries, but not limited? No, what I'm saying is that my client, although it signed and attempted to basically close and execute an agreement with Daikin Industries, Daikin Industries never agreed to do business with my client and therefore never signed the contract. My client did business with a U.S. entity whose name is Daikin U.S., and we presented evidence in our motion to alter or amend the judgment via a copy of an invoice, which they call a sales contract, where the proper name of the party we were doing business with prior to appeal is reflected clearly. And this is an invoice from 2002, the alleged contract which remained unsigned and which we claim never was enforceable and was never entered into is from the year 2000. And the court makes the inference that when we say with what is now Daikin Applied, that the predecessor of Daikin Applied was Daikin Industries when it had documents, evidence, conclusive evidence that there was a third company, a third company. So you're saying you don't have a contract with Industries, you don't have a contract with Applied, that you have a contract with something called Daikin U.S.? No, under Act 75, Your Honor, we don't have to have a written contract under Act 75. I'm not talking about written contract. I'm just trying to figure out, obviously, you're saying you have a contract with somebody and I'm trying to figure out who you're saying you have a contract with before we move on. Initially, we had a business distribution relationship with a company named Daikin U.S., which is a U.S. company. And thereafter, they reorganized their structure and they told us that in 2013-14, we had to do business with Daikin Applied, which is also a U.S. company. We never did business with the Japanese company. And the truth of the matter is that if you look at the language of the opinion and order itself, it has some interesting quotes. OK, so you say you had a contract with Daikin U.S., which you say they told you later on should be referred to as Daikin Applied, both of which are U.S. companies. What are the terms of the contract and how are we supposed to determine the terms of the contract? I assume you're saying we shouldn't look at the written contract, which was something your client, you're saying, never entered into. So what would we look to to figure out what the terms of the contract that you are alleging to be in effect? Basically, to the allegations of the complaint, Your Honor, is the only place you can look at. Please remember that right now, what we have, what you have before you is a case that got dismissed for lack of subject matter jurisdiction as per the terms of the Federal Arbitration Act. So it follows then that all allegations in the complaint in this procedural stage needs to be deemed true and the district court was obligated to make all reasonable inferences in favor of the plaintiffs. And there's plenty of case law, even from this district. You're alleging a contract. No, I'm not. I'm not alleging a contract. I am alleging that there was a distribution relationship sheltered under Act 75. All right. And that the act specifically states when it defines what is a distribution contract or distribution agreement, that it can either be a written agreement or a distribution relationship. And what we what we have here and what is properly alleged in the complaint is that we what we have is a distribution relationship. And again, all inferences associated with that with those allegations has to be done in favor of the plaintiff, meaning my client. So, Counselor, are you saying that you were in your complaint, you were alleging what you call a distribution relationship, and the court construed that as an allegation that you had a contractual relationship with with Daikin USA, also known as Daikin Applied. Is that the mistake that the court made? Again, it is the only thing you have to look at is allegation number 12 of the amended complaint, which is the one that the district court used in order to reach its determination. And there it reads early in the year 2000, ERCON established, not a contract, a distribution relationship with what is now Daikin Applied for the exclusive distribution of air conditioners and related equipment with what is now Daikin Applied. That phrase was interpreted by the district court as stating that the predecessor of Daikin Applied was Daikin Industries. And let me ask you, this is all this is really all beside the point, because you had this alternative argument that, OK, even if even if the court was right, that there was a that this this this unsigned agreement, which the court, I think, said actually is a contract between your client and Daikin USA or Daikin Applied, even if that is the contract, it that your client that let me step back one moment, that that OK, that that's an agreement between your client and Daikin Industries. Is that correct? That that's correct. The Japanese company and that that contract does contain a provision that says if this is to be if this is to be assigned, it can only be assigned with your consent and that in that contract includes the arbitration provisions at issue here. And it's your position that absent some consent to an assignment to Daikin USA or Daikin Applied, that that arbitration provision is unenforceable, that that is your position. Is that correct? That's 100 percent correct, Your Honor. Section 28, Section 3. Can you explain a mystery to me and maybe your opposing counsel will respond to this. The district court says nothing about that assignment issue. I think that's right. And I don't see anything in Neapoli's brief that says anything about that assignment issue. And yet, if you're right, you win the case. So, I mean, how can you explain that that issue is not addressed anywhere? I guess that's not your burden to explain. But it's just because I guess I promise it. Did you raise that issue below? Did you argue? You did. Yes, before the before the judgment was issued and after the judgment was issued. OK, so it was it was there for the district court to address. It was there for Apolli to respond to. And for some reason, unbeknownst to me, Apolli chose not to address the issue in the lower court. OK. And another issue, your honor, that basically striking from my counsel. Just take one minute. Yeah. The final issue that I want to address is that the same contract has a term which expired on December 31st, 2003. And that contract has a choice of law provision and has a choice of foreign provision, both of which are set upon Osaka, Japan. If that is the case, there's plenty of case law, plenty of case law. If that country were to be deemed enforceable, stating that then and I quote the Puerto Rico Supreme Court, and it is it comes out of the brief from Apolli, the Federal Arbitration Act preempts the Puerto Rico Dealers Act to the extent that it negates as against public policy, arbitration clauses which provide for arbitration of controversies outside of Puerto Rico or under foreign rule of law. So it follows the question, how could it be logically argued that if this country has a choice of law, which is Japan and a choice of photo, which is arbitration in Osaka, Japan, that under Act 75, then the term the parties were obligated, legally obligated by the statute to renew it annually. That is completely logical and it is a blatant mistake. There was also an alternative argument premised on the sales slips that contain arbitration. What is your argument? And I believe the arbitration in that instance, if that were enforceable, was to take place in Florida, if I recall correctly. What is your argument? What is your argument as to why that's not binding upon you? Yeah, if you look at those documents, your honor, those are basically a title sales contract, but it's essentially an invoice for products sold by that can apply to my client. Okay, that invoice, essentially, if you call it a contract and they do call it a sales contract, they don't call it a distribution agreement. That sales contract provides the object of the purchase and sale, the price, delivery terms. There's nothing stipulated there, nothing about the distribution rights of either party, neither that can apply nor my client. So how could it be responsibly argued, responsibly argued, that under the Federal Arbitration Act, which specifically requires the written unequivocal consent from my client, to my client to have voluntarily submitted to arbitration in Florida? It doesn't make any sense either. Again, I agree to arbitration in Florida. If there's a dispute about the qualities of the goods that are delivered to me, if the products are not delivered in time, if somehow they're delivered to the wrong place, if the bill of lading reflects that there are 12 pieces of equipment and I only received 10, evidently those are the types of issues, controversies, that might logically arise out of a sales contract or an invoice for products sold. Okay, thank you, Mr. Santiago. If you could mute your video and audio, we'll hear from Mr. Muñiz. Good afternoon, Your Honor. Mauricio Muñiz on behalf of Daikin Applied Appellate. May it please the Court. As you know, this appeal stems from an opinion and order that granted Daikin's motion to dismiss to compel arbitration. And I think I want to touch upon three specific issues during my argument. The first one is the standard of review. Why don't you get to that non-assignment provision? The non-assignment provision? Well, at this point, at this stage of the proceedings in which the court, the district court on a motion to dismiss had taken the complaint allegations as true, and this court is in the same position and needs to take the allegations as true. I agree with Brother Counsel. You have plenty of complaint allegations that will put this issue into context. First is the paragraph number six, in which states, early in the year 2000, EIRCON established a distribution relationship with what is now Daikin Applied for the exclusive sale and distribution of air conditioners and related equipment. The next paragraph is, according to the distribution relationship established since the year 2000 until approximately 2013, 2014, EIRCON had been the sole distributor of the Daikin products. What does that have to do with a contract between them and Daikin Industries? In the sense that in the complaint allegations, which is what you need to take as true at this stage, they concede that the relationship started in the year 2000 and continued... Not with Daikin Industries. Daikin Industries is a separate entity. I agree. My apologies, Your Honor. I agree. But in the same complaint allegations, EIRCON admits that the relationship continued with Daikin Applied Latin America, my client at this time, under the same terms and conditions. And that is the written agreement. But... What paragraph do they concede that this particular written agreement applies? What I mentioned is on paragraphs 6, 7, and 8, they mentioned that the distribution relationship that started in early 2000, and it just so happens that the written agreement was signed on January 24, 2000, has continued to be on the same terms and conditions from 2000 until today. So under their complaint allegations, they... What about the non-assignment? If they had a contract with industries that's non-assignable? Well, Your Honor, at this stage, again, we take the complaint allegations as true. And be it as it may, you have another avenue that I believe resolves that issue. And the issue here today is the arbitrariness... What is that avenue? The PrimaPaint line of cases. And actually, the appellant goes into details in their brief at page 7, stating that... You're saying there's a severability issue here? You can sever... Apologies. What are you saying is a severability issue? Are you saying that in response to the question about the non-assignability? Yes, because the court does not need to reach that conclusion here. That's an issue for arbitration. Under the PrimaPaint line of cases, and something that is... So, assuming they had a contract to arbitrate with something called Daikin Industries that's non-assignable, what's the agreement to arbitrate here? The written agreement first. That's our position. It's under the complaint allegations they have admitted, or at least tacitly admitted, that the same distribution relationship that started in the year 2000 has continued. That is why we presented the court with the contract. And as to the issue of the assignment... Excuse me. Are you saying that the assignability question, or whether there was a valid assignment or not, is arbitrable itself under the contract? Is that what you're saying? Correct. Under the PrimaPaint line of cases, yes. Because as you can see from the arbitration clause in the written contract, it's broad enough that it doesn't only support or the claims being made by ERCON fall under that, but even the issues or challenges he's making to the contract itself. Wouldn't that only be the case with respect to a dispute between Daikin Industries and ERCON? Why would that necessarily flow to the purported assignee? Because, as we mentioned in our brief, Daikin Applied is under the Daikin Industries umbrella. So the way the operations happened was that Daikin Applied continued, took control of the contract. Are you saying there was no assignment? Well, Daikin Applied did get or took control of the contract. There's no evidence yet on the record about the written assignability back then. But that's an issue for arbitration, not for the court, if I respectfully submit. But you didn't. Even with respect to the argument you just articulated, you never said a word about that in your brief, right? Yeah. And so this is what I don't understand. We have this unsigned contract. It was anticipated that Daikin Industries would sign it. They never signed it. The court looks at that contract and says, well, there really is a contract through a course of dealing, I guess, between ERCON and Daikin Applied. And then the district court looks at that contract, that draft, that unsigned contract, and finds in it an arbitration clause and says, on the basis of that arbitration clause, ERCON is compelled to engage in arbitration. That same contract that has that arbitration clause in it also has the assignment provision in it, which says that this contract will not be binding on ERCON if it's assigned to somebody else, like Daikin Applied, unless they consent to it. And you're saying that although it's okay to rely on the arbitration provision to compel ERCON to arbitrate, it's not okay to look at the assignment provision in the same contract? In light of their argument that that assignment, that requirement, that they have to consent to the assignment, since they never consented to it, it's not binding on them. I guess I don't mean to be so long-winded. If you can rely on the arbitration provision, how can you not also rely on the assignment? How can we not also look at the assignment provision in the same contract? I just don't get that. I hear you, Your Honor, but under the PRIMA Paint line of cases, again, you have, there's two situations. One, when there's a challenge to the validity of the entire contract itself, and then there's the specific challenge as to the arbitration clause within that agreement. There's no such challenge as to the arbitration clause within that agreement here. As a matter of fact, as someone, as you pointed out, I believe, was they have the alternate argument about the assignment. So technically speaking, they are not challenging or may concede that the written agreement in 2000 existed. With that said, once under the PRIMA Paint line of cases, you can sever the arbitration clause, look at it and see if it's broad enough, and in this case it is, and you need to then under the Section 2 of the Federal Arbitration Act, you must give all the credence and accept the arbitration clause under all its terms, and then send the matter to arbitration. But the plaintiff is saying they didn't even sue the party to the written contract. They didn't bring suit against Daikin Industries. They brought suit against Daikin Applied, and it's Applied who's coming in and saying, no, no, they have a contract with another entity, and people set up these different entities for all kinds of tax purposes. So just saying it's an umbrella doesn't do anything. So you're coming in now with this written contract saying they've got a contract with a different company outside of the suit itself, and you're saying that you're the beneficiary or that you've taken over the rights of the contract, but yet there's a non-assignment clause. That is correct, Your Honor. Daikin Applied took over that contract. It is implicitly conceded in the complaint allegations, and at the end of the day, the issue of the… Well, it's not conceded. Well, at the end of the day, under the Supreme Court progeny of cases, you can sever the arbitration agreement, and that specific issue of the assignability is an arbitrable matter. Again, many of the arguments made by Brother Counsel here today are factual. These are not part of the record to a certain… are not part of the complaint allegations, which is what on a motion to dismiss, the district court has to take as true. If Brother Counsel is putting another context to the plain written allegations, that's another story, but the district court and the court here today must evaluate these factual determinations under clear error, and you have plenty of factual allegations in the complaint that were correctly written or interpreted by the district court. Why should we consider this argument, Counsel? You never make the argument in your brief. I mean, they make this not an assignability argument. You ignore it, and now, in response to our question, you're arguing this, I guess, a kind of severability issue, but you never make that argument in your brief. What entitles you to have us consider it now? Well, the assignment issue, we address it with the same way of the standard of review or the standard that the district court had to review our motion is you take the complaint allegations as true, and in the complaint allegations, you have the allegations that they started doing a business with another entity that is now Daikin Applied. They're inserting now the Daikin Industries matter. But your position isn't even that Applied is the same company as Industries. That's not even your argument. Correct. They're not. They're parent subsidiary type of relation under the same umbrella. What we're saying is under the same complaint allegations and the way operations have done, Daikin Applied assumed the role in this contract and has operated since. And I want to bring one point about the consent and issue. Wait a minute. Daikin Applied has to make an independent argument as to why the arbitration provision applies to them, which is what? Not Industries, but why is there an arbitration agreement between Applied and Aircon? Well, you have two avenues. So we've discussed two avenues, one through the complaint allegations about how they relate. They certainly don't allege in their complaint that they're subject to arbitration. And then the second matter that we've brought in our brief is what you mentioned, the sales contracts. Every purchase that Aircon has made of its products to bring to Puerto Rico are under these invoices that contain an arbitration clause also. That has nothing to do with the distribution relationship. This lawsuit is all about the distribution relationship between Aircon and Daikin Applied. I don't know how an arbitration provision in specific sales contracts between Aircon and Daikin Applied has anything to do with the ongoing distribution relationship. That seems to be an entirely separate matter. Well, respectfully, Your Honor, it does, because they are, if you look at the complaint, they're talking about a paragraph 34. I'm sorry, they object about the price increases, the prices of the products, the inventory, the delivery of the inventory. That all comes from the purchase orders and those documents that compose the sales contracts. So they're directly related to those contracts too. Okay. All right. Thank you, Mr. Muniz. Mr. Santiago, you've reserved two minutes if you choose to use it. 30 seconds, Your Honor. I only want to quote from the opinion on order issued by the district court. The district court there, making reference to a case from this court, from the circuit Intergen NB 344F3 at page 143. The district court states that this circuit has interpreted that courts need to be worried of forcing arbitrations in situations in which the identity of the parties who have agreed to arbitrate is unclear. Simply put, Your Honor, this is a textbook case of a situation where evidently the ability of taking a plight to force us into arbitration at the very least is unclear. So that would be my position, Your Honors, and thank you for your time and your attention. Thank you, and thanks to all counsel this morning for your time and your arguments. Thanks. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may now disconnect from the meeting.